**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8   ALAN BUSCHMAN,                          No. C-13-1787 EMC
9              Plaintiff,
                                            **ORDER DENYING DEFENDANT'S**
10       v.                                 **MOTION FOR SUMMARY JUDGMENT**
11  ANESTHESIA BUSINESS CONSULTANTS          **(Docket No. 26)**
    LLC, *et al.*,
12
               Defendants.
13  _____/
14
15                    I.    __INTRODUCTION__
16         Plaintiff, an anaesthesiologist, has sued Anesthesia Business Consultants, LLC, an entity
17  which provides business, financial, and managerial services to Northern California Anesthesia
18  Physicians, Inc. (a professional group of which Plaintiff is a member), alleging breach of contract
19  and negligence causes of action.  Plaintiff alleges that one of Defendant's responsibilities was to
20  manage and administer benefits programs for the member physicians – including the group disability
21  insurance policy covering each participating member physician.  An employee of Defendant's
22  predecessor in interest erroneously informed the insurance company that Plaintiff was to be
23  cancelled from the group disability insurance policy in 2006.  In 2012, Plaintiff became disabled as a
24  result of a surgery.  The insurance company has declined coverage under the group policy, citing the
25  2006 cancellation.  Plaintiff filed the instant suit against Defendant, alleging a cause of action for
26  breach of contract and negligence arising out of the 2006 cancellation.  Defendant has moved for
27  summary judgment, arguing that Plaintiffs' causes of action are barred by the statute of limitations.
28  For the following reasons, Defendant's motion is **DENIED**.

**United States District Court**
For the Northern District of California

## II.   FACTUAL & PROCEDURAL BACKGROUND

A.   Relationship Between Plaintiff, NCAP, and Defendant

Plaintiff, Dr. Alan Buschman, is an anaesthesiologist and member of the Board of Directors of Northern California Anesthesia Physicians, Inc. ("NCAP").  Compl. ¶ 1 (Docket No. 1).  NCAP is a group of approximately 50 anesthesiology physicians who are based in hospitals or operating rooms, and therefore do not have traditional offices.  *Id.* ¶ 11.  Accordingly, in or around 1993, NCAP hired Anesthesiologists Associated, Inc. ("AAI") to provide "management and consulting services related to, among other things, the billing and employee benefit services in which AAI specialized."  *Id.* ¶ 6.  AAI's services including "all management and billing related to employee benefits, including insurance coverage."  *Id.* ¶ 5.  AAI was, therefore, responsible for "overseeing, managing and bookkeeping responsibilities related to employee benefits, including timely payment of employee insurance premiums."  *Id.*

On November 1, 2006, AAI and NCAP renewed the 1993 agreement.  *Id.* ¶ 9.  The "basic terms and conditions" in the 2006 contract were "substantially similar, if not identical, to the terms and conditions" of the prior contracts.  *Id.*  Under the 2006 agreement, AAI agreed to provide, among other things, "Financial Services including maintaining general ledger, payroll, draw and bonus calculations, ***processing and payment of physician expenses including insurance premiums, employee benefits*** and general business expenses . . . ."  *Id.* ¶ 10 (emphasis in original); *see also* Services Agreement Between Anesthesiologists Associated, Inc. and Northern California Anesthesia Physicians, Inc., Ex. A-1.4 ("Processing and payment of Client expenses including insurance premiums, employee benefits and general business expenses") (Docket No.29-3).  Accordingly, Dr. Buschman, as well as the other NCAP members, provided AAI with patient billings, expense information, and benefit information for direct processing.  *Id.* ¶ 12.  AAI would then subtract fees for the services they provided the member physicians based on a variable fee schedule.  *Id.*

In or around January 2008, Defendant Anesthesia Business Consultants, LLC acquired AAI.  *Id.* ¶ 7.  On that date, Defendant "assumed responsibility under the contracts that AAI entered, including the consulting agreement it entered with NCAP."  *Id.*  Defendant did, in fact, begin

1   performing AAI's contractual obligations.  *Id.*  Further, Defendant "retained nearly all of AAI's

2   employees, including those servicing NCAP."  *Id.* ¶ 8.

3   B.      NCAP Group Insurance Policy and Dr. Buschman's Disability Claim

4           In 1993, NCAP decided to provide group long term disability insurance plan to its physician

5   members, including Dr. Buschman.  *Id.* ¶ 15.  Unum Life Insurance Company of America

6   ("UNUM") underwrote this policy.  *Id.*  AAI undertook to negotiate the rates and coverage, enrolled

7   the physician members in the policy, and ensured that the premiums were timely paid on behalf of

8   the physicians.  *Id.* ¶ 17.  In addition to this group policy, Dr. Buschman secured an individual

9   disability insurance policy through UNUM, beginning in or about 1990.  *Id.* ¶ 19.

10          UNUM would send AAI monthly statements and an AAI employee named Marietta Kleve

11  would look at the list of NACP physicians and make sure that the information on the monthly

12  statement was correct – for example, that names were spelled correctly and that no doctors needed to

13  be added to or removed from the list, etc.  Deposition of Marietta Kleve ("Kleve Dep.") at 19

14  (Docket No. 27-4 & Docket No. 31-2).  She would make the necessary changes on the monthly

15  statement before sending it back to UNUM and paying the invoice.  *Id.*  In February 2006, she

16  indicated on the monthly statement that Dr. Buschman's insurance was to be cancelled.  Compl.  ¶

17  25.  On the invoice, she listed that Dr. Buschman had been "terminated."  *Id.*  Ms. Kleve testified at

18  her deposition that she would not cancel a participating physician's insurance coverage without that

19  physician instructing her to do so and without creating a paper trail of the transaction.  Kleve Dep. at

20  19-20.  Dr. Buschman alleges that he neither knew of nor consented to the cancellation of his group

21  disability coverage.  *Id.*  Further, at no point was Dr. Buschman terminated from NCAP – he

22  remains a member physician and board member of NCAP.  Compl. ¶ 26.

23          In 2005, prior to the cancellation of Dr. Buschman's group coverage, AAI withheld $390 per

24  month from Plaintiff's paycheck.  Deposition of Marietta Kleve ("Kleve Dep.") at 27; *see also*

25  Rosengren Decl., Ex. E (monthly earning report for Dr. Buschman showing $318 in monthly

26

27

28

                                                    3

premiums in 1997).[1]  Dr. Buschman admitted during his deposition that approximately $390 was

taken out per month (in 2005) for his group disability insurance coverage.  Buschman Dep. at 125.

He admitted that while he  received the monthly statements in question, he did not review the

documents in detail.  *Id.* at 126.  After February 2006, the withholdings for group coverage no

longer are listed on Dr. Buschman's earning statements.  *See* Rosengren Decl. F.

    In 2012, Dr. Buschman underwent surgery to remove a spinal cord tumor.  Deposition of

Alan Buschman ("Buschman Dep.") at 248 (Docket No.29-1).  As a result of this surgery, Dr.

Buschman became disabled and unable to work.  *Id.*  He suffered from extreme pain; sensitivity to

cold, pressure, and touch; was unable to sit for extended periods of time; as well as additional

symptoms.  *Id.* at 256.  As a result of this disability, Dr. Buschman attempted to make a claim under

the UNUM group disability policy in May 2012.  Compl. ¶ 22; Buschman Dep. at 278.  He claims

that UNUM's denial of coverage was the first time he learned that his coverage under the disability

policy had been canceled erroneously in 2006.  *Id.* at 269-70.[2]

---

[1] Dr. Buschman has raised a number of evidentiary objections to the portions of Ms. Kleve's deposition upon which Defendant relies as well as the exhibits E through H attached to the Rosengren Declaration.  These exhibits relate to copies of Dr. Buschmans' income statements and earning statements for various months in 1997, 2005, and 2007.  With regards to Ms. Kleve's deposition transcript, Dr. Buschman has moved to strike the cited portions as the result of leading questions, speculation, or lack of foundation.  To the extent Dr. Buschman complains of the use of leading questions, the objection is **OVERRULED**.  *See Morgan v. Bill Vann Co., Inc.*, — F. Supp. 2d — , 2013 WL 4657502, at 1 n.6 (S.D. Ala. Aug. 30, 2013).

    Dr. Buschman's objections to Dr. Buschman's purported income and earnings statements attached to the Rosengren Declaration are **SUSTAINED** for purposes of this motion. In *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002), the Ninth Circuit reiterated the rule that documents filed in support of a summary judgment motion must be introduced through an individual "through whom the exhibits could be admitted into evidence." *Id.* at 773-74.  It expressly held that a declaration by counsel asserting that the document was a "true and correct copy" was insufficient. *Id.*; *see also Sadeh v. Venetian Casino Resort, LLC*, No. 2:10-cv-02224, 2012 WL 3065442, at *4 (D. Nev. July 27, 2012) ("A document cannot be authenticated merely by an attorney's declaration stating that the document is true and correct . . . .").

    Accordingly, the Court does not consider the challenged exhibits for purposes of this motion for summary judgment.

    [2] Dr. Buschman is receiving coverage under his individual disability policy.  Buschman Dep. at 32.

4

United States District Court
For the Northern District of California

Dr. Buschman filed the instant lawsuit in California state court on March 22, 2013.  Docket No. 1.  The complaint alleges two causes of action – breach of contract and negligence.  Defendant remove the action to federal court on the basis of diversity jurisdiction on April 19, 2013.  On March 10, 2014, Defendant filed the instant motion for summary judgment arguing that Dr. Buschman's claims are barred by the statute of limitations.

### III.   JURISDICTION

The notice of removal in this case contains insufficient allegations regarding the citizenship of Defendant.  Specifically, the notice of removal alleges that "Defendant ABC, both at the time the state court action was filed and at present, is a resident of the State of Delaware, incorporated and existing under the laws of the State of Delaware and has its principal place of business in Jackson, Michigan."  Docket No. 1, at 2.[3]  However, For purposes of determining diversity jurisdiction, a limited liability company is deemed to have the citizenship of *each of its members.  See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of *every* state of which its owners/members are citizens." (emphasis added)).  An LLC's principal place of business of state of organization is irrelevant to this analysis.

Because the notice of removal contained no allegations regarding the citizenship of each of Defendant's members, it fails to establish that complete diversity between the parties exist and, thus, that this Court had subject matter jurisdiction of this dispute.  *See, e.g., Wagner v. Spire Vision LLC*, No. 13-00054 YGR, 2013 WL 941383, at *1 (N.D. Cal. Mar. 8, 2013) (remanding action to state court because "Defendants have failed to allege adequately the citizenship of all the parties to this action. Limited liability companies, or LLCs, are like partnerships in that they are a citizen of every state where its owners and members are citizens."); *Nguyen v. BrooksAmerica*, No. CV 09-7054-JFW, 2009 WL 3162435, at *1 (C.D. Cal. Sept. 29, 2009) (dismissing for lack of subject matter

---

[3] The Court notes that Defendant's repeated assertion that it is "incorporated" in Delaware is mistaken.  Defendant is not a corporation, but rather a limited liability company and is, therefore, not incorporated.  *See, e.g., Alatorre v. Wastequip Mfg. Co. LLC*, 2:12-CV-02394-MCE, 2012 WL 6628955, at *4 n.4 (E.D. Cal. Dec. 19, 2012) ("The Court notes that while an LLC may have a place of formation, it has no place of 'incorporation,' as an LLC is, by definition not incorporated.").

United States District Court
For the Northern District of California

1   jurisdiction, in part, because "Plaintiffs have failed to specifically allege . . . the citizenship of each

2   member of the LLC defendant.").

3          Rather than remand this action on the basis of the above error, on April 18, 2014, the Court

4   issued an order to show cause why this case should not be remanded to California state court on the

5   basis of lack of subject matter jurisdiction.  Docket No. 35.   The order specifically required

6   Defendant to provide information regarding the citizenship of its members.  Defendant has

7   responded to the Court's order to show cause by asserting that Defendant has a single member –

8   MMGS Holdings, LLC.  Docket No. 36.  MMGS Holdings, LLC, in turn, has two members –

9   MiraMed Global Services, Inc. (a Michigan corporation) and the Hamid Mirafzali Revocable Trust

10  (a trust whose trustee is a citizen of Michigan).  Docket No. 37.[4]  Accordingly, complete diversity is

11  satisfied in this case as Dr. Buschman is a citizen of California and Defendant is a citizen of

12  Michigan and removal was proper.

13         As a result, this Court's April 18, 2014 order to show cause is **DISCHARGED**.

14                              **IV.    DISCUSSION**

15  A.     Legal Standard

16         Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if

17  the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

18  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

19  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine

20  only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See*

21  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

22  "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on

23  which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. At the

24  summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving

25

26

27         [4] "For trusts, the Supreme Court has deemed the citizenship of the trustees to be
    determinative."  *Majestic Ins. Co. v. Allianz Int'l Ins. Co.*, 133 F. Supp. 2d 1218, 1222 (N.D. Cal.
28  2001) (citing *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).

United States District Court

For the Northern District of California

1   party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255, 106

2   S.Ct. 2505.

3   B.   <u>Analysis</u>

4        Defendant's motion for summary judgment presents one core legal question: When did Dr.

5   Buschman's breach of contract and negligence claims accrue?  If the answer is 2006 – when the

6   alleged breach occurred – then Dr. Buschman's claims are barred by the statute of limitations unless

7   the statute is tolled by application of California's discovery rule.  If the answer is 2012 when Dr.

8   Buschman became disabled and was denied coverage under the group disability insurance policy,

9   this action is timely.

10        1.   <u>Breach of Contract Cause of Action</u>

11        Under California law,[5] breach of contract actions based on a written contract are governed by

12   a four year statute of limitations.  *See* Cal. Code Civ. Proc. § 337.  Generally, a "cause of action for

13   breach of contract accrues at the time of breach, which then starts the limitations period running."

14   *Brown v. Brown*, No. CV 13-03318 SI, 2013 WL 5947032, at *4 (N.D. Cal. Nov. 5, 2013) (quoting

15   *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120 (1997)).  On the other hand, California courts

16   have stated that an action accrues "at the time when the cause of action is complete with *all* of its

17   elements."  *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005) (citation omitted)

18   (emphasis added); *see also Soliman v. Philip Morris Inc.*, 311 F.3d 966 (9th Cir. 2002) ("The statute

19   of limitations normally begins to run when the claim accrues, that is, 'when the cause of action is

20   complete with all of its elements.'"); 3 Witkin Cal. Proc. § 493 (5th ed. 2008) ("The cause of action

21   ordinarily accrues when, under the substantive law, the wrongful act is done and the obligation or

22   liability arises, i.e., when an action may be brought.").

23        Under this rule, California cases have held that where monetary damages is an element of the

24   offense, accrual of the action does not occur until pecuniary loss is suffered.  *See, e.g.*, *City of Vista*

25   *v. Robert Thomas Sec.*, 84 Cal. App. 4th 882, 887 (2000).  Multiple courts have held that the "mere

---

27        [5] The parties agree that California governs the statute of limitations inquiry in this diversity
action.  *See Simpson v. Robert Bosch Tool Corporation*, No. 12-cv-05379 WHO, 2014 WL 985067,
28   at *2 (N.D. Cal. Mar. 7, 2014) ("In a federal diversity action brought under state law, the state
statute of limitations governs.").

7

United States District Court
For the Northern District of California

possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable." *Walker v. Pacific Indemnity Co.*, 183 Cal. App. 2d 513, 517 (1960). Significantly, uncertainty about the *fact* of damage (*i.e.*, whether the victim will actually suffer some damage) prevents the accrual of a cause of action, but uncertainty only about the *amount* or *extent* of damages will not. *Id.*; *see also Ventura County Humane Society for the Prevention of Cruelty to Children and Animals v. Holloway*, 40 Cal. App. 3d 897 (1974) ("As often emphasized, it is the uncertainty as to the fact of damage rather than its amount which negatives the existence of a cause of action based on either breach of contract and/or negligence.").

The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *See CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Accordingly, because a cause of action accrues when all of the elements of a cause of action are present, the simple fact that a party has breached a contract – without more – does not commence the statute of limitations. Because a plaintiff may not assert a breach of contract action unless it is able to recover damages, it may be argued that a cause of action for breach of contract does not accrue until the fact of damages has occurred. In *Davies v. Krasna*, 14 Cal. 3d 502 (1975) (in bank), the California Supreme Court (in the context of a breach of confidential relationship cause of action) stated:

> Impelled by [a] concern for the pragmatic, we have drifted away from the view held by some that a limitations period necessarily begins when an act or omission of defendant constitutes a legal wrong as a matter of substantive law. Rather, we generally now subscribe to the view that the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages.

*Id.* at 513 (citation omitted). Stated another way, a breach of contract claim does not lie and hence does not accrue until the plaintiff must show an "actionable and appreciable" harm beyond mere nominal damages . *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage."); *see also Roberts v. Los Angeles County Bar Ass'n*, 105 Cal. App. 4th 604, 617

United States District Court

For the Northern District of California

1    (2003) ("Actual damage as opposed to mere nominal damages is another essential element of a

2    cause of action for breach of contract.").

3         As Defendant recognizes, there are a number of cases in California which hold in particular

4    that when an insurance broker fails to provide insurance, the cause of action for professional

5    negligence will not accrue until the plaintiff actually suffered injury.  Thus, for example, in *Walker*

6    *v. Pacific Identify Company*, 183 Cal. App. 2d 513 (1960), a logging truck operator ordered liability

7    insurance from the defendant in the amount of $50,000.  *Id.* at 515.  The insurance broker, however,

8    negligently secured an insurance policy in the amount of $15,000.  *Id.*  Three months later, the

9    operators's logging truck collided with a car causing injury to the driver.  *Id.*  The driver filed a

10   personal injury lawsuit and three years later a jury returned a $100,000 verdict.  *Id.*  The insurance

11   company only paid $15,000 on the judgment under the policy.  *Id.*  The logging truck operator

12   assigned his right to sue the insurance company for negligent procuring of insurance to the driver.

13   The critical question in the case was whether the cause of action against the insurance broker

14   accrued on the date the incorrect insurance policy was secured or the date of the jury's verdict in the

15   personal injury action.

16        The Court of Appeal began by noting there was "no dispute" that the alleged wrong occurred

17   on March 17, 1952 when "defendant 'negligently and carelessly' procured a policy with limits of

18   $15,000, rather than $50,000."  *Id.* at 516.  The court, however, determined that there was no "injury

19   or damage" on that date.  It noted:

20              It is true that [the truck operator] then received less than he had
             ordered.  But it is difficult to conceive what action he could then have
21              brought.  Complaint for defendant's negligent failure to procure
             additional coverage would, in view of the ready availability of
22              automobile insurance, have been demurrable.  Until an accident
             occurred, bodily injury was inflicted on another, and a liability in
23              excess of the $15,000 coverage incurred, there was no injury to [the
             truck operator] in the absence of possible special facts which do not
24              appear here.

25   *Id.* at 516 (citation omitted).  Further, the court concluded that even the filing of the personal injury

26   action seeking a $100,000 judgment did not give rise to injury or damage because it was wholly

27   speculative on that date that the truck operator would be found liable at all, let alone beyond the

28   $15,000 policy limit.  *Id.*

United States District Court

For the Northern District of California

1    The reasoning of *Walker* – and similar cases regarding negligent procurement of insurance –

2    supports Dr. Buschman's position that his cause of action for negligence and breach of contract did

3    not accrue until he actually suffered *damage* as a result of the lack of group disability insurance.

4    The *Walker* court directly rejected the contention that living with reduced insurance coverage

5    constitutes an "injury" or "damage" for purposes of a cause of action accruing.

6    Defendant seeks to distinguish *Walker* and related cases by pointing to the fact they all

7    involve insurance brokers who owe an elevated duty to their clients. *See* Mot. at 7.  The Court

8    disagrees.  While the heightened duty insurance brokers face may affect the substantive standard

9    applicable to liability analysis, there is no logical reason why broker status should affect the statute

10   of limitations analysis.  Defendant has cited no California case where a court has held that special

11   accrual rules apply to causes of action involving certain defendants, like brokers.  In fact, the

12   California Supreme Court in *Davies* – a case not involving insurance brokers or insurance in any

13   sense – found *Walker* "particularly illustrative" for the proposition the mere breach of a duty which

14   causes only nominal damages, speculative harm, or the risk of future harm will normally not create a

15   cause of action. *Davies*, 14 Cal. 3d at 513.[6]

16   Defendant relies upon two additional cases for its argument that the cause of action in this

17   case accrued on the date Dr. Buschman was erroneously terminated from the group liability

18   insurance policy.  First, in *Lewis v. Security-First National Bank of Los Angeles*, 58 Cal. App. 2d

19   827 (1943), plaintiff entered into an oral contract with a bank in which the bank promised to secure

20   fire insurance for a building plaintiff was constructing once the building was complete. *Id.* at 829.

21   No insurance was ever provided, and three years after construction, the building was destroyed by

22

23   [6] Defendant also seeks to distinguish *Walker*, arguing that the defendant in that case had

24   provided *some* insurance (thus making the fact of harm even more speculative) while here, Dr.
     Buschman was denied *all* group disability insurance in 2006.  The Court finds this argument
     unpersuasive as the reasoning of *Walker* has been applied in cases where the plaintiff was

25   completely denied some form of insurance coverage by the negligence of an insurance broker. *See,*
     *e.g.*, *Butcher v. Truck Ins. Exchange*, 77 Cal. App. 4th 1442, 1470 (2000) (applying *Walker* and

26   finding no statute of limitations bar where defendant's alleged negligence deprived plaintiff of all
     personal injury insurance coverage: "Until the malicious prosecution action was filed and served,

27   and appellants were required to defend, whether the omission of personal injury coverage would
     harm them at all was a mere possibility.").  Nor is there any logical basis to distinguish for accrual

28   purposes situations in which some rather than no insurance coverage is obtained.  In either instance,
     the would-be insured arguably suffered a risk as a result of the breach.

United States District Court

For the Northern District of California

fire. *Id.* at 828. In finding that plaintiff's cause of action for breach of contract was barred by the statute of limitations, the California Court of Appeal stated:

> In the instant case plaintiffs allege that the contract, for the breach of which they are suing, was an oral contract. Since defendant did not, at any time, procure a policy of fire insurance in accordance with its alleged agreement, plaintiffs' cause of action accrued, if at all, not later than June 1, 1937, the date the building was completed upon the property described in the trust deed mentioned above. The present action was not filed until December 23, 1941. Therefore, since more than two years had elapsed after plaintiffs' cause of action accrued before the present action was commenced, it was clearly barred by the applicable provision of the statute of limitations . . . .

*Id.* at 829. At first glance, this case appears directly on point.

However, *Lewis* has been strictly limited, if not implicitly overruled. First, as quoted above, the California Supreme Court in *Davies* expressly held it had "drifted away from the view held by some that a limitations period necessarily begins when an act or omission of defendant constitutes a legal wrong." *Davies*, 14 Cal. 3d at 514. Accordingly, while not expressly overruling *Lewis*, the California Supreme Court has distanced itself from the core accrual holding embraced by *Lewis*. Second, subsequent to *Walker*, the Court of Appeals appears to have limited *Lewis* to its facts:

> It is difficult to distinguish Lewis from the case at bar. However, in *Lewis* the bank was neither licensed nor engaged in the business of insurance brokerage, whereas defendant Fulmore is alleged to be a "licensed insurance agent." Also, the question whether the fire insurance was to be procured only for the benefit of the bank, to protect its security, is not discussed, and the opinion does not disclose whether the loan remained unpaid at the time of the fire. Admittedly, these distinctions are somewhat thin. However, we elect not to extend the rather harsh rule of *Lewis* beyond the precise facts there presented.

*Walker*, 183 Cal. App. 2d at 518-19. It is noteworthy that no California court has cited *Lewis* in over half a century. In light of all the above, the Court declines to find *Lewis* controlling to the case at bar.

Second, Defendant relies on *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603 (1992), for its argument that Dr. Buschman's cause of action accrued in 2006. In that case, six sales representatives of defendant sued on a variety of causes of action, including breach of contract. Plaintiffs argued that prior to 1987 they had worked for defendant under an oral agreement which provided they could not be terminated except for good cause, which was narrowly defined.

United States District Court

For the Northern District of California

1  *Id.* at 608.  In November 1987, however, plaintiffs were told that if they did not sign newly drafted

2  agreements before they left the room – agreements which provided for termination without cause –

3  they would be terminated.  *Id.* at 609.  Plaintiffs signed the agreements and were eventually

4  terminated in 1989 and 1990.  *Id.*  The California Court of Appeal concluded that plaintiffs' breach

5  of contract action was barred by the statute of limitations, holding:

6           It was undisputed that Patricia Rienzi threatened to terminate
            appellants if they did not sign the 1987 Agreements before leaving the
7           room.  That condition was not "good cause" as defined by the oral
            agreements. Appellants were harmed by giving up their right to be
8           terminated only for good cause.  Accordingly, respondent breached the
            oral agreements in November 1987, starting the running of the statute
9           of limitations.  The complaint was filed on March 6, 1990, more that
            two years later and is thus barred by the applicable statute of
10          limitations.

11  *Id.* at 614.

12          However, like *Lewis*, the *Marketing West* decision has not fared well in subsequent

13  interpretations by California courts.  In *McCaskey v. California State Auto Association*, 189 Cal.

14  App. 4th 947 (2010), the Court of Appeal found that there was a "discrepancy" in the *Marketing

15  West* court's statute of limitations reasoning and that the analysis was unnecessary and "logically

16  incoherent."  *Id.* at 961 & n.5  The court began by noting that the *Marketing West* plaintiffs'

17  sounded in wrongful discharge, and that the plaintiffs relied "on a claimed breach of a promise not

18  to discharge them without good cause."  *Id.* at 961.  However, the defendant in that case had argued

19  that the subsequent agreement had repudiated the earlier promise.  Thus, plaintiffs' claim

20          necessarily presupposed that the later agreement was *ineffectual* to
            have the intended effect.  If that was the case, the later agreement
21          *inflicted no harm* on the plaintiffs, compensable or otherwise, and
            could not possibly commence the running of the statute of limitations.
22          If, on the other hand, that agreement injured the plaintiffs, as the court
            supposed, by destroying their erstwhile right not to be terminated
23          without cause, then they *had* no claim based on that earlier right; the
            promise sued upon was no longer in effect, and therefore could not
24          have been breached, when they were fired.  From a limitations
            perspective, a cause of action based on that theory had never accrued,
25          and *could* never accrue.

26  *Id.* at 961.  In summarizing its criticism of *Marketing West*, the court stated:

27          In short, the later agreement could not inflict the harm on which the
            court predicated its holding unless it rendered the original promise
28          *substantively unenforceable*.  But if it did that, a claim based on the

original promise failed on the merits.  The net result of the court's analysis, seemingly, was to beg the truly dispositive question, which is whether the later agreement actually did excuse the employer from complying with the earlier one.  If it did, the plaintiffs had no claim.  If it did not, they had a claim.  The statute of limitations had no proper place in either alternative.

*Id.*  Accordingly, the Court concludes that *Marketing West*'s one-paragraph discussion of the statute of limitations to be unpersuasive in light of the California Court of Appeal's subsequent critique of *Marketing West*'s reasoning.

Given the nature of the breach in this case, and current California law requiring that a plaintiff suffer actual harm before bringing a cause of action, the Court finds that Dr. Buschman's cause of action did not accrue until he became disabled and was denied coverage under the group disability insurance policy.  While the Court recognizes a good argument can be made that Dr. Buschman suffered harm when the terminated policy exposed him to an unwarranted risk, that view has not been accepted by recent California cases, at least with respect to cases involving insurance coverage.  *See* 3 Witkin, Cal. Proc. Actions § 501 (5th ed. 2008).  Given this holding, the Court need not reach the parties' argument regarding the applicability of California's "discovery rule."  Accordingly, Defendant's motion for summary judgment on Dr. Buschman's breach of contract action is **DENIED**.

2.    Negligence Cause of Action

Like the breach of contract action, Dr. Buschman's negligence cause of action is governed by California's four year "catch all" statute of limitations.  *See id.* § 343 ("An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued.").[7]

---

[7] While California provides a two year statute of limitations for "action[s] for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."  Cal. Code Civ. Proc. § 335.1.  This provision, however, applies to personal injury actions.  *See, e.g.*, *Survive v. Cottle*, No. CV F 12-1453 LJO JLT, 2013 WL 103576, at *4 (E.D. Cal. Jan. 8, 2013) ("On January 1, 2003, California Code of Civil procedure section 335.1 . . . took effect to extend the limitations period for personal injury actions . . . .").  Defendant admits that the longer, four year statute of limitations applies.  Def. Mot. to Dismiss ("Mot.") at 8 (Docket No. 26).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    The above analysis regarding the accrual of the breach of contract action is equally

2    applicable to the negligence cause of action.  In *Merchants Fire Assurance Corp. of N.Y. v. Retail*

3    *Credit Company, Inc.*, 206 Cal. App. 2d 55 (1962), an insurance company retained defendant to

4    conduct a risk assessment on a piece of property that they insured against physical damage.  The

5    purpose of the report was to assist the insurance company in determining whether to cancel the

6    insurance policy on the property.  In September 1957, the defendant supplied a report which  falsely

7    stated that the property in question did not "stand on filled ground" even though the property did, in

8    fact, stand on unstable filled ground  *Id.* at 57.  In 1958, a landslide of the filled ground occurred,

9    causing damage to the property.  *Id.* It was at this point that the insurance company discovered that

10   the defendant's report had been false.   In November 1958, the insurance company entered into a

11   settlement with the property owner regarding the damage to the property.  *Id.*

12   The insurance company sued for breach of contract and negligence in 1960.  In rejecting

13   defendant's statute of limitations argument, the California Court of Appeals began by noting that the

14   "breach" of the contract occurred when defendant's false report was delivered to the insurance

15   company.  *Id.* at 58.  However, it was not until the landslide occurred, and the insurance company

16   became liable to the property owner under the insurance policy, that the insurance company actually

17   suffered damage.  Applying *Walker*, the court stated:

18       The tort cause of action may not have arisen until the landslide, upon
         the theory that there is no cause of action in tort for nominal damages.
19       When the landslide occurred in April 1958 plaintiff became
         unconditionally liable to its assured for the amount of the physical
20       damage to the assured's home.  This supplied the element of damage
         which made the tort cause of action complete.  This occurred more
21       than two years prior to the commencement of the action.

22   *Id.* at 58.

23   Accordingly, for the same reasons discussed above, the Court concludes that the negligence

24   cause of action is not barred by the statute of limitations and Defendant's motion for summary

25   judgment is **DENIED**.

26                          **V.    CONCLUSION**

27   As the Court noted at the hearing, application of California's accrual rules in the context of

28   insurance cases arguably creates a perverse incentive on the part of plaintiffs to sit on their rights,

**United States District Court**
For the Northern District of California

1  avoid paying insurance premiums, and wait to bring suit for breach when (and if) they end up

2  needing to make a claim on the insurance policy.  On this record, there is no indication that this is

3  what Dr. Buschman did.  In fact, at this stage of proceedings, the parties dispute whether Dr.

4  Buschman was even aware in 2006 that his group disability insurance coverage had been cancelled.

5  In any event, even if perverse policy incentives were apparent, the current California case law is

6  reasonably clear.  Dr. Buschman's causes of action did not accrue until he became deserted and

7  suffered actual injury as a result of his disability policy having been terminated.

8       While Defendant's motion for summary judgment is denied, this ruling is without prejudice

9  to other defenses that might be asserted at trial and the Court does not address whether, and to what

10  extent, *e.g.*, the doctrines of comparative negligence or mitigation of damages eliminates or reduces

11  the scope of damages to which Dr. Buschman will be entitled should he prevail at trial.  *See, e.g.*,

12  *Kleinclaus v. Marin Realty Co.*, 94 Cal. App. 2d 733, 739 (1949) ("[T]he duty to mitigate damages

13  exists alike in cases of breach of contract and tort, willful as well as negligent.").

14       For the foregoing reasons, Defendant's motion for summary judgment on the basis of the

15  statute of limitations is **DENIED**.

16

17       IT IS SO ORDERED.

18

19  Dated:  May 13, 2014

20  _____

21  EDWARD M. CHEN
    United States District Judge

22

23

24

25

26

27

28